**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF OHIO**
**WESTERN DIVISION**

SANDRA DENISE PERKINS,

Plaintiff,

v.

COMMISSIONER OF SOCIAL SECURITY,

Defendant.

Case No. 1:20-cv-554

Bowman, M.J.

## MEMORANDUM ORDER AND OPINION

Plaintiff filed this Social Security appeal in order to challenge the Defendant's finding that she is not disabled. *See* 42 U.S.C. §405(g). Proceeding through counsel, Plaintiff presents two claims for this Court's review. For the reasons explained below, the Court affirms the Commissioner's non-disability determination, which is supported by substantial evidence in the record as a whole.[1]

### I. Summary of Administrative Record

On July 10, 2017, Plaintiff filed an application for Disability Insurance Benefits ("DIB"), alleging that she became disabled beginning on January 1, 2015 due to her COPD and depression.[2] After her claim was denied initially and upon reconsideration, Plaintiff requested an evidentiary hearing before an Administrative Law Judge ("ALJ"). On July 29, 2019, Plaintiff appeared with counsel in Cincinnati, Ohio and gave testimony before ALJ Peter Boylan. A vocational expert also testified. (Tr. 41-60).

---

[1]The parties have consented to the jurisdiction of the undersigned magistrate judge. *See* 28 U.S.C. §636(c).
[2]Based upon the date of Plaintiff's application, the Commissioner reviewed the application under a new set of regulations that took effect on March 27, 2017. *See*, *e.g.*, 20 C.F.R. § 404.1520c (2017).

Plaintiff was 48 years old on her disability onset date, which is defined as a "younger individual," but was 52, in the "closely approaching advanced age" category, by the time the ALJ issued his decision. She lives in a single family home with her husband and seven year old son, and has a high school degree. (Tr. 45). She has past relevant work as a food service manager and as a server/waitress, but has not worked full-time since the birth of her son. She worked part-time after 2014. However, because those earnings were below the substantial gainful activity ("SGA") levels, she does not have SGA after her alleged disability onset date. (Tr. 23). Plaintiff is insured, for purposes of DIB,[3] through June 30, 2020.

On August 14, 2019, the ALJ issued an adverse written decision, concluding that Plaintiff is not disabled. (Tr. 21-32). The ALJ determined that Plaintiff has a single severe impairment of: "chronic obstructive pulmonary disease (COPD)." (Tr. 23). The ALJ concluded that additional alleged impairments of tennis elbow and depression were not severe. (Tr. 23-24) He further determined that Plaintiff's COPD did not meet the severity required for Listing 3.02, such that she would be entitled to a presumption of disability. (Tr. 25). Plaintiff does not challenge the ALJ's Listing level determination.

Next, the ALJ determined that notwithstanding her impairments, Plaintiff retains the residual functional capacity ("RFC") to perform a range of light work, subject to the following additional limitations:

> [S]he is limited to frequent climbing of ramps and stairs, but occasional climbing of ladders, ropes, and scaffolds. The claimant is limited to frequent exposure to extreme cold, extreme heat, and humidity. She is limited to occasional exposure to fumes, odors, dusts, gases, and poor ventilation.

---

[3]Plaintiff did not apply for Supplement Security Income ("SSI").

(Tr. 25). Considering Plaintiff's age, education, and RFC, and based on testimony from the vocational expert, the ALJ determined that Plaintiff could still perform her past relevant work as a server/waitress. (Tr. 30). In the alternative, the ALJ determined that Plaintiff could perform other jobs at the light exertional level that exist in significant numbers in the national economy, including the representative occupations of Cashier II, Merchandise Marker, and Deli Cutter/slicer. (Tr. 31). Therefore, the ALJ determined that Plaintiff was not under a disability. The Appeals Council denied further review, leaving the ALJ's decision as the final decision of the Commissioner.

## II. Analysis

### A. Judicial Standard of Review

To be eligible for benefits, a claimant must be under a "disability." *See* 42 U.S.C. §1382c(a). Narrowed to its statutory meaning, a "disability" includes only physical or mental impairments that are both "medically determinable" and severe enough to prevent the applicant from (1) performing his or her past job and (2) engaging in "substantial gainful activity" that is available in the regional or national economies. *See Bowen v. City of New York*, 476 U.S. 467, 469-70 (1986).

When a court is asked to review the Commissioner's denial of benefits, the court's first inquiry is to determine whether the ALJ's non-disability finding is supported by substantial evidence. 42 U.S.C. § 405(g). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (additional citation and internal quotation omitted). In conducting this review, the court should consider the record as a whole. *Hephner v. Mathews*, 574 F.2d 359, 362 (6th Cir. 1978). If substantial evidence supports the ALJ's denial of benefits, then that finding must be affirmed, even if substantial

evidence also exists in the record to support a finding of disability. *Felisky v. Bowen*, 35 F.3d 1027, 1035 (6th Cir. 1994). As the Sixth Circuit has explained:

> The Secretary's findings are not subject to reversal merely because substantial evidence exists in the record to support a different conclusion.... The substantial evidence standard presupposes that there is a 'zone of choice' within which the Secretary may proceed without interference from the courts. If the Secretary's decision is supported by substantial evidence, a reviewing court must affirm.

*Id.* (citations omitted). In *Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019), the Supreme Court confirmed that while the standard requires some quantum that is "more than a mere scintilla," "the threshold for such evidentiary sufficiency is not high." (internal quotation and citation omitted).

In considering an application for supplemental security income or for disability benefits, the Social Security Agency is guided by the following sequential benefits analysis: at Step 1, the Commissioner asks if the claimant is still performing substantial gainful activity; at Step 2, the Commissioner determines if one or more of the claimant's impairments are "severe;" at Step 3, the Commissioner analyzes whether the claimant's impairments, singly or in combination, meet or equal a Listing in the Listing of Impairments; at Step 4, the Commissioner determines whether or not the claimant can still perform his or her past relevant work; and finally, at Step 5, if it is established that claimant can no longer perform his or her past relevant work, the burden of proof shifts to the agency to determine whether a significant number of other jobs which the claimant can perform exist in the national economy. *See Combs v. Commissioner of Soc. Sec.*, 459 F.3d 640, 643 (6th Cir. 2006); 20 C.F.R. §§404.1520, 416.920.

A plaintiff bears the ultimate burden to prove by sufficient evidence that she is entitled to disability benefits. 20 C.F.R. § 404.1512(a). A claimant seeking benefits must present sufficient evidence to show that, during the relevant time period, she suffered an

impairment, or combination of impairments, expected to last at least twelve months, that left her unable to perform any job. 42 U.S.C. § 423(d)(1)(A).

**B. Plaintiff's Claims of Error**

Plaintiff's Statement of Errors asserts two claims: (1) The ALJ failed to incorporate greater limitations to pulmonary irritants that were supported by the State agency consultants; and (2) the ALJ failed to properly weigh the opinion of Certified Nurse Practitioner Valerie Smith. I find no error.

**1. The ALJ's Evaluation of Consulting Opinion Evidence**

In her first claim, Plaintiff argues that the ALJ committed reversible error when he failed to fully incorporate the limitations endorsed by two agency consulting physicians. On September 17, 2017, non-examining consultant, William Bolz, M.D., completed a residual functional capacity assessment in which he opined that Plaintiff could frequently lift and/or carry 10 pounds and occasionally lift and/or carry 20 pounds, which is consistent with the light exertional level. (Tr. 74). Dr. Bolz stated that Plaintiff could sit and stand/walk a total of 6 hours each in an 8-hour day, which is also consistent with light work. (*Id.*) As additional non-exertional limitations, Dr. Bolz opined that Plaintiff should "avoid concentrated exposure" to extreme heat, cold, and humidity, and "[a]void even moderate exposure" to fumes, odors, dusts, gases, and poor ventilation. (Tr. 74-75). On February 13, 2018, non-examining state consultant Elizabeth Das, M.D. concurred with Dr. Bolz's assessment and opinions. (Tr. 89-91).

The ALJ expressly relied on the consultants' opinions when he determined Plaintiff's RFC, finding both opinions to be persuasive and well-supported because they were "consistent with the medical record as a whole" and because "[t]hese doctors are highly qualified experts in Social Security disability evaluations who cite to evidence in

the record to make their determinations. (Tr. 30). Despite that reliance, Plaintiff complains that the ALJ failed to include a limitation that she must avoid "even moderate exposure" to pulmonary irritants like fumes, odors, dusts, gases and poor ventilation. Instead, the ALJ determined that Plaintiff was functionally limited to only "occasional exposure" to such irritants. (Tr. 25).

Plaintiff's argument begins with an assumption that the functional limitation to "occasional exposure" differs from and exceeds the less than "moderate" exposure endorsed by the consulting physicians. Plaintiff concedes that an ALJ is not required to adopt the functional opinions of a medical source in their entirety; however, Plaintiff argues that in this case, remand is required because the ALJ did not use the exact wording used by the consulting physicians and failed to explain the perceived inconsistency**.** To support her argument, Plaintiff cites to SSR 96-8p, which states that an RFC assessment "must include a narrative discussion describing how the evidence supports each conclusion," including an explanation of "how any material inconsistencies or ambiguities in the evidence in the case record were considered and resolved." SSR 96-8p, 1996 WL 374184, at *7 (1996). SSR 96-8p explicitly requires ALJs to "explain why the opinion was not adopted" if the ALJ's RFC assessment conflicts with an opinion from a medical source. *Id.*

In response, the Commissioner first asserts that the type of articulation error that Plaintiff presents under SSR 96-8p no longer exists, in light of the new regulations that apply to Plaintiff's July 2017 application. Although SSR 96-8ph has not been formally rescinded, the Commissioner points out that it is based upon and expressly quotes from prior regulations that gave "controlling weight" to treating sources. *See Holohan v.*

*Massanari*, 246 F.3d 1195, 1202 n. 1 (9th Cir. 2001) ("We will not defer to SSRs if they are inconsistent with the statute or regulations.") (additional citation omitted).

The undersigned finds no need to reach the issue of whether SSR 96-8p applies to applications filed after March 27, 2017. Instead, the Court will affirm the ALJ's RFC pulmonary irritant exposure limitations based upon the Commissioner's second, fact-based argument, as well as a third argument that demonstrates the lack of any legal error even if SSR 96-8p were to apply.

In his second argument, the Commissioner argues that substantial evidence in the record supports the RFC as determined, including the limitation to "occasional exposure" to pulmonary irritants. The Court agrees. Carefully examining the medical records, the ALJ found that Plaintiff's COPD is only mild to moderate in severity, and improved over time with treatment even while Plaintiff continued to smoke cigarettes against medical advice. (Tr. 26-30). The ALJ discussed multiple objective medical records that provide substantial support for his conclusions and RFC findings, including the limitation to "occasional exposure" to pulmonary irritants.

In addition, although Plaintiff testified that she experienced some symptoms when she was around dust or smelled odors or fumes such as cleaning products, air fresheners, or hairspray, (Tr. 53), she primarily complained of shortness of breath due to activity or exertion. With respect to Plaintiff's subjective complaints in particular, the ALJ noted many inconsistencies.

> The undersigned considered the claimant's allegations and found them neither consistent with nor well supported by the objective medical findings, the claimant's statements about her activities, her minimal medication regimen, her doctor's observations, and the opinions of the DDS consultants. She testified that she has shortness of breath, but admitted she is in no physical discomfort except the normal aging process. The claimant reported that she can occasionally make food, wash dishes, and do laundry, although her husband helps her, and she is able to play computer games

> with her son, use a Facebook page, and cares for several pets. It is noted that the claimant has decreased resources for treatment, but admitted that she has nicotine patches at her house which she does not use, stating she had "no excuses" (1F/9). The claimant testified that she cannot work due to COPD, but objective testing shows results that are not listing level with only mild to moderate obstruction; therefore, it is found that the claimant's impairments are not as severe as she alleges.

(Tr. 29). In short, the record provides substantial support for the ALJ's RFC determination that Plaintiff is capable of performing work that subjects her to "occasional contact" with pulmonary irritants.

In addition to the substantial factual support for the ALJ's RFC determination, the Commissioner persuasively argues that there is no material inconsistency between the consulting opinions and the RFC determined by the ALJ. In other words, even if SSR 96-8p still applies, Plaintiff has failed to identify any unexplained "inconsistency" that would require remand. Fundamentally, Plaintiff's basic premise – that there is a discrepancy between the ALJ's functional limitation to "occasional exposure" to pulmonary irritants and the consultants' opinion that Plaintiff should avoid "even moderate exposure" to such irritants – compares apples to oranges. The "moderate" descriptor used by the consultants and the "occasional" descriptor used by the ALJ are both terms of art, but each describes a different scale, and those scales cannot be equated. The consulting physicians provided an opinion about Plaintiff's <u>level</u> of exposure to irritants, which is expressed in terms of none, mild, moderate, or extreme. By contrast, the ALJ's RFC limitation described the <u>frequency</u> of exposure in the manner expressed in the Dictionary of Occupational Titles ("DOT"). The DOT's functional job descriptions express frequency as none, occasional, frequent, or constant.

In recognition of the differing scales, multiple courts have found no apparent conflict to exist between a preclusion of the "moderate" *level* of exposure to irritants and

a DOT job that may require a *frequency* of "occasional" exposure. In the recent case of *Ilioff v. Saul*, 2021 WL 848204 (M.D.N.C. March 5, 2021), the plaintiff also complained about a perceived discrepancy between "moderate" and "occasional" exposure.[4] There, the district court collected and discussed several cases at length that address this issue, beginning with *Glover v. Berryhill*, 2017 WL 2506411, at *8 (N.D. Ill. June 9, 2017) (unpublished).

> [I]t is unclear that any conflict exists in the present case, let alone an apparent one. Essentially, [the c]laimant argues that a conflict occurred between the ALJ's hypothetical question, which limited the individual to [avoid even] "moderate" [exposure to] environmental irritants, and the VE's testimony that the individual could perform work as a room cleaner, groundskeeper, and industrial cleaner because the positions only involved "occasional" exposure to environmental irritants. [The c]laimant argues that it should have been apparent to the ALJ that the VE misunderstood the difference between the qualitative term "moderate" and the quantitative term "occasional[,]"[ ] and he should have sought explanation for the apparent conflict. This argument is unpersuasive. We find, and [the c]laimant points to, no authority in the [DOT] or otherwise that supports [the c]laimant's contentions. In fact, [the c]laimant simply highlights a difference in terminology between the scale used to measure a claimant's environmental limitations (unlimited, avoid concentrated exposure, avoid even moderate exposure, avoid all exposure) and his or her exertional limitations (constantly, frequently, occasionally, and none).

*Illioff*, 2021 WL 848204, at *9 (quoting *Glover*, 2017 WL 2506411 at *8 (emphasis omitted)); *see also id.* (quoting *Sanchez v. Colvin*, 2014 WL 4065091, at *17 (E.D.N.Y. Aug. 14, 2014) (holding that a limitation to avoid concentrated exposure to atmospheric conditions did not conflict with a DOT job description that required frequent exposure, because the first term refers to the quantity or magnitude, whereas the second refers to frequency or proportion of time that a condition may be present).

---

[4]The fact that the alleged inconsistency in *Illioff* occurred between the ALJ's RFC finding and the DOT job descriptions is immaterial; the legal issue is the same.

*Illioff* makes clear that such a theoretical inconsistency is no cause for concern, much less remand.[5] Other cases reach a similar conclusion, albeit for different reasons. *See Jones v. Saul*, 2019 WL 7499163, at *12 (N.D. Fla., Sept. 8, 2019) (affirming because physician indicated "the level of exposure to environmental conditions," whereas the ALJ appropriately "formatted the limitations in terms of the maximum permissible level of exposure," finding no conflict between the avoidance of "even moderate exposure" and "occasional" exposure; *see also*, *generally*, *Kelley v. Commissioner of Social Sec*., 2012 WL 6139307, at *6 (S.D. Ohio, Dec. 11, 2012) (affirming without comment where medical expert translated opinions that claimant must "avoid moderate exposure" into functional limitation to "no more than occasional contact with concentrated exposure"); *Carr v. Com'r of Soc. Sec.*, 2019 WL 3732147 (N.D. Ohio, May 24, 2019) (affirming without comment where ALJ gave "great weight" to consultants who opined that the plaintiff should avoid "even moderate exposure" which ALJ translated into "occasional" exposure to irritants). While acknowledging the existence of some contrary case law, *see*, *e.g*., *MacClelland v. Saul*, 2020 WL 4334854 (E.D. Pa. July 21, 2020), the undersigned finds persuasive the conclusion of the majority of courts that have found that no genuine conflict exists between the phrase used by the consulting physicians and the ALJ's translation of that phrase into an RFC determination.

Last but not least, even if this Court were to accept Plaintiff's underlying premise that a material inconsistency between the phrases exists, the undersigned would not

---

[5]In addition to its lengthy discussion of *Glover* and *Sanchez*, *Illioff* cites two additional cases. *See id.* at *9, citing *Johnson v. Commissioner, SSA*, 764 Fed. Appx. 754, 761 (10th Cir. 2019) (finding no conflict when hypothetical required avoidance of concentrated exposure to humidity and VE testimony referenced DOT jobs where indicated that humid conditions are either not present or only present occasionally) and *Patton v. Colvin*, 2013 WL 6018059, at *6 (C.D. Cal. Nov. 12, 2013) (finding no apparent conflict between the VE's testimony and the DOT where hypothetical precluded concentrated exposure to irritants and DOT jobs allowed for occasional exposure).

remand because any error was harmless on the record presented. As the Commissioner points out, the ALJ determined that Plaintiff could perform both her past relevant work as a waitress, and other jobs as a Cashier II, Marker, and Deli Cutter/slicer. None of the DOT descriptions for any of those positions require any exposure to fumes/odors, dust, toxic caustic chemicals, or atmospheric conditions. *See generally*, *Wilson v. Berryhill*, 2017 WL 2720344, at *15 (N.D. Ohio, June 23, 2017) (finding failure to incorporate state agency consultants' opinions that claimant should avoid "even moderate exposure" to irritants to be "harmless error" based on record that showed no impact on the jobs that the plaintiff could perform).

**2. The ALJ's Consideration of the Opinions of CNP Valerie Smith**

In her second claim, Plaintiff contends that the RFC determination is not supported by substantial evidence because the ALJ failed to "properly weigh" two opinions offered by Plaintiff's treating certified nurse practitioner, Valerie Smith. (*See* Doc. 12 at 12). Plaintiff is quick to point out that the new regulations include certified nurse practitioners as acceptable medical sources. However, as the Commissioner is equally quick to note, the new regulations have abandoned the former regulatory structure that gave priority to treating sources and required ALJs to describe the weight that they were giving to each medical opinion. In the new regulatory scheme, ALJs are not technically required to "weigh" any opinion - at least not in the same manner as the prior regulations. Instead, ALJs need only articulate the "persuasiveness" of opinions with respect to consistency and supportability, and may (but are not required to) discuss other factors. *See* 20 C.F.R. §404.1520c(b)(1) and (b)(2) (2017). The Court agrees with the Commissioner that the ALJ complied with these regulatory requirements.

On August 16, 2017, CNP Smith completed both a Mental Capacity Assessment and a Physical Assessment form. The Mental Capacity form included questions about broad functional areas used to evaluate mental disabilities. Under the functional area of "concentration, persistence or maintaining pace," Ms. Smith opined that Plaintiff had "marked" restrictions in her "ability to work a full day without needing more than the allotted number or length of rest periods during the day" based upon her COPD. (Tr. 392). On the separate Physical Assessment form Ms. Smith similarly opined that Plaintiff's COPD would "constantly" "interfere with the attention & concentration required to perform simple work-related tasks." (Tr. 394). She states that Plaintiff would need unscheduled 15-minute breaks every hour, and "will need to sit with frequent rest breaks." (Tr. 394). She further opines that Plaintiff can walk less than one city block, can sit only 45 to 60 minutes (total) in an eight hour day, and also can stand only 45 to 60 minutes per day. (*Id.*) In addition, Ms. Smith states that Plaintiff can use her hands, fingers, or reach only up to 25 percent of the work day, and will miss more than four days of work per month. (Tr. 394-395).

On May 1, 2019, Ms. Smith completed a second Physical Assessment form. (Tr. 528). Consistent with the earlier forms, she opined that Plaintiff's COPD would frequently interfere with her attention and concentration, and noted that Plaintiff would need to sit in excess of the typical breaks allotted as a waitress. (Tr. 528). However, on the 2019 form, Ms. Smith states that Plaintiff can sit for a total of 5 hours and stand/walk for a total of 2 hours in an 8-hour day – significantly longer periods than indicated on the 2017 form. (Tr. 528). The 2019 form also includes fewer unscheduled breaks than does the 2017 form – just two breaks for 10-15 minutes as opposed to 15 minutes every hour. Finally, the

2019 form states that Plaintiff has no restrictions at all with handling, fingering or reaching, and would only miss one or two days per month of work. (*Id.*)

In his evaluation of Ms. Smith's 2017 Mental Capacity Assessment regarding Plaintiff's mental impairments, the ALJ accurately stated that Ms. Smith attributes no limitations to Plaintiff's depression and instead attributes "concentration" limitations solely to Plaintiff's COPD. The ALJ carefully differentiated Ms. Smith's opinions concerning Plaintiff's mental impairments from her opinions concerning Plaintiff's physical impairments.[6] "She opined that the claimant had a marked limitation in her ability to work a full day without needing more than the allotted number or length of rest periods during the day, noting that the claimant had COPD." (Tr. 29). The ALJ next determined that Ms. Smith's opinions regarding Plaintiff's mental limitations were only "somewhat persuasive." (*Id.*) Specifically, the ALJ disagreed with Ms. Smith that Plaintiff had no limitations from mental impairments, and instead found "mild" limitations in interacting with others and in the functional area of adapting or managing oneself. (Tr. 24).

In contrast to his finding that Ms. Smith's mental limitation opinions were "somewhat persuasive," the ALJ found Ms. Smith's opinions regarding Plaintiff's physical impairments to be "unpersuasive." (Tr. 30). "[S]he stated the…only diagnosis was COPD, and she does not give support or explanation for her opinion[s]." (Tr. 30). In addition, while the opinions expressed on the 2019 form reflect improvement in multiple areas, the

---

[6]Plaintiff argues that the ALJ may have rejected the limitation in her ability to work a full day "merely because CNP Smith proffered it on a form intended to summarize Plaintiff's mental impairments." (Doc. 12 at 14). The Court disagrees. In context, the ALJ was appropriately differentiating between his analysis of Ms. Smith's mental impairment opinions (which he found only "somewhat persuasive") and his analysis of her opinions of Plaintiff's physical limitations from her COPD. Because Ms. Smith indicated a physical COPD limitation on a "Mental Capacity" form, the ALJ's comment serves to explain that he (correctly) understood Ms. Smith to be opining that Plaintiff had no limitations at all in the area of concentration, persistence, or pace that related to her mental impairment. In other words, he did not reject Ms. Smith's opinions based upon the form on which they were submitted.

ALJ noted that Ms. Smith provided no explanation for the changes, reinforcing the ALJ's conclusion that her opinions were inconsistent and very poorly supported, if at all.[7] With respect to the 2017 opinion that Plaintiff's COPD would severely limit her ability to use her upper extremities, the ALJ found that "this does not appear justified from [Ms. Smith's] own records or from evidence as a whole." (*Id.*) Likewise, concerning the estimate that Plaintiff would be absent from work more than four times per month, the ALJ reasoned that "she did not give any explanation for this extreme limitation." (Tr. 27). In sum, the ALJ considered both supportability and consistency before finding Ms. Smith's opinions to be "unpersuasive."

Plaintiff concedes that Ms. Smith's "check-box" forms provided only "weak evidence" of disability. *See Hernandez v. Com'r*, 644 Fed. Appx. 468, 474 (6th Cir. 2016), but argues that it was "incumbent upon the ALJ to dig deeper" to determine the supportability and consistency of Ms. Smith's opinions with the record as a whole. But the ALJ did exactly that by discussing the record throughout his opinion. Notably, both Ms. Smith's 2017 and 2019 opinions indicate much more extreme limitations than indicated by Plaintiff herself. At the hearing, Plaintiff testified that she can sit up to five hours at one time and stand up to five hours at one time. (Tr. 26). And, as previously discussed, Plaintiff does not here challenge the ALJ's determination that her subjective complaints about her alleged disability were inconsistent with other substantial evidence.

Plaintiff argues that a handful of records strongly support Ms. Smith's functional limitations. Even if that were true (a proposition with which the Court cannot agree), that

[7] Plaintiff calls the ALJ's reference to the "slight" differences between the two opinions a "red herring." (Doc. 12 at 17). In the Court's view, however, the differences are not "slight" and the ALJ's analysis simply highlights the lack of supportability for either of the opinions.

would not obviate the substantial (if not overwhelming) evidence that supports the ALJ's RFC finding, or his conclusion that Ms. Smith's opinions were "unpersuasive." In addition to Ms. Smith's notes, the ALJ reviewed and discussed multiple treatment records beginning in September 2015 from Celedor Akintunde, M.D., Jessica Smith, M.D., Registered Pulmonary Function Technologist Gina Onorini, and David Wiltse, M.D. Those records showed "mild to moderate" level COPD that improved over time with treatment despite brief exacerbations, and despite Plaintiff's continuing to smoke for years against medical advice.[8] (*See*, *e.g.*, Tr. 380, 404 (diagnosis of "mild" COPD), 467 (diagnosis of "moderate" COPD), 478, 480, 533-534). The ALJ reasonably pointed out that Plaintiff attempted to quit smoking only shortly before the hearing. More importantly, the ALJ discussed the medical records at length throughout his opinion:

> The bulk of the claimant's medical records fail to show significant and ongoing physical manifestations of her impairments that would support greater restrictions than those found in her residual functional capacity. The physical examinations have been relatively benign with the claimant demonstrating generally normal examinations and mild to moderate breathing issues.

(Tr. 28; *see*, *generally*, Tr. 26-30).

Although the ALJ cited to many individual records, he was not required to specifically discuss each treatment note or area of disagreement with Ms. Smith's extreme and work-preclusive opinions. Reading the opinion as a whole, the ALJ fairly described the lack of supportability and lack of consistency for Ms. Smith's opinions,

---

[8]Plaintiff does not appear to have sought medical care for her COPD until September 15, 2015, approximately nine months after her alleged onset of disability. (Tr. 384). In December 2015, Plaintiff reported she was smoking about 10 cigarettes a day, and that her shortness of breath was chronic but <u>did not interfere with her daily activities</u>. (Tr. 373).

including between her two 2017 and 2019 opinions and other substantial evidence of record, such as Plaintiff's testimony and the opinions of the consulting physicians.

**III. Conclusion and Order**

For the reasons explained herein, **IT IS ORDERED THAT** Defendant's decision be **AFFIRMED** as supported by substantial evidence, and that this case be **CLOSED**.

*s/ Stephanie K. Bowman*
Stephanie K. Bowman
United States Magistrate Judge